

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-15-00184-CR

---

TIMOTHY WADE MITLEFF, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Franklin County, Texas
Trial Court No. 8998

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After an early morning altercation with his wife, Alishia, Timothy Wade Mitleff was arrested, and subsequently indicted, for family-violence assault against his wife. The criminal action against Mitleff came about after Alishia and the couple's fifteen-year-old daughter, Destinie, each made oral and written statements describing Mitleff's actions. The statements were corroborated by marks on Alishia's neck, which provided evidence that Alishia had been choked. Although the trial testimony of both Alishia and Destinie related a pronouncedly different picture of the incident than was contained in their original statements, a jury in Franklin County adjudged Mitleff guilty of the charged offense. Because the range of punishment was enhanced by Mitleff's prior felony conviction, Mitleff was assessed a punishment of twenty years' confinement in the Texas Department of Criminal Justice Correctional Institutions Division. On appeal, Mitleff challenges the sufficiency of evidence supporting his conviction and contends that he was deprived of the effective assistance of counsel.

Finding that there was sufficient evidence provided for the jury to have found Mitleff guilty of the charged offense and noting that Mitleff has failed to establish that he received ineffective assistance of counsel, we affirm the judgment of the trial court.

## I.     Sufficient Evidence Supports the Conviction

### A.     Standard of Review

In his first point of error, Mitleff complains that the evidence introduced against him was not legally sufficient to sustain his conviction of family-violence assault. In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trier of

fact's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). Further, the jury "is the sole judge of the credibility of the witnesses and the weight of the evidence." *Hartsfield*, 305 S.W.3d at 869 (citing *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999)).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a measure the courts call a "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Based on the indictment and the statute, the State had to prove beyond a reasonable doubt that on or about March 29, 2015, Mitleff (1) intentionally, knowingly, or recklessly (2) caused (3) bodily injury (4) to Alishia, a member of his family, (5) by intentionally, knowingly, or recklessly (6) impeding Alishia's normal (a) breathing or (b) circulation of blood (7) by applying

3

pressure to her throat or neck. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(B) (West Supp. 2015). Mitleff admits that the events for which the charge was lodged occurred on the date which was alleged and that Alishia was his wife (therefore, a member of his family) on that date. He only challenges the sufficiency of the evidence showing that he caused Alishia bodily injury by intentionally, knowingly, or recklessly impeding her normal breathing or circulation of blood by applying pressure to her throat or neck.

### B. Evidence at Trial

The evidence at trial showed that around 5:00 a.m. on March 29, 2015, Destinie placed a 9-1-1 emergency telephone call from her grandmother's telephone. On the recording of the 9-1-1 call played for the jury, Destinie is heard telling the operator that her father had been choking her mother and had busted her lip. She also stated that she was asleep in her room and was awakened by her mother's screams. Although much of the content of the call is difficult to determine, Christian Vanart, the 9-1-1 dispatcher with the Franklin County Sheriff's Department who received the call, testified that during the call, Destinie stated, "Do you want him to keep hitting you?" According to Vanart, Destinie also stated, "He's not putting his hands on you anymore."; "I mean, if it wasn't for me, he probably would have killed her[.]"; and "I have no doubt in my mind he would have killed her."

Deputy Leopoldo Herrera, Jr., of the Franklin County Sheriff's Department was dispatched to the Mitleff residence that morning and found Destinie and her grandmother, Lisa Bowen (who is also Alishia's mother), in the front yard of the Mitleff residence. Herrera described Destinie and Bowen as appearing quite hysterical and distraught and said they seemed afraid due to the

4

incident that had just occurred. He also testified that when he initially tried to talk with Alishia, she was crying non-stop and could not talk. After an unsuccessful search for Mitleff, Herrera returned and interviewed Destinie and Alishia. Alishia told Herrera at that time that she and Mitleff had argued and that when she went into the bathroom to brush her teeth, he came up behind her, grabbed her neck, and started choking her. During that interview, Alishia told Herrera that if Destinie had not come into the room, Mitleff probably would have killed her and that she felt that she was about to pass out as Mitleff was choking her.

Herrera also testified that Destinie told him that she was asleep in her bedroom and was awakened by screaming and yelling. Destinie related to him that she went to her parents' bathroom and observed that Mitleff was in his underwear, had Alishia pinned to the bathtub, and had his hand around her neck, choking her. Seeing the situation, she attempted to call for assistance by calling 9-1-1 on her cell phone, her father grabbed her cell phone and said, "You're not calling the cops." Destinie then left her parents' house and went next door to her grandmother's residence, where she placed a 9-1-1 call. Herrera also testified that he observed several scratches on the right side of Alishia's neck, and photographs of these injuries were shown to the jury. He also said that he overheard Bowen tell Alishia that she needed to get out of the relationship because she would eventually be killed if she did not.

The State also introduced a duplicate of a recording made from Herrera's dashboard camera and played it for the jury. On the recording, Alishia is heard to say in a shaky voice that Mitleff had walked in the bathroom "and started choking the crap out of me." Destinie was heard telling

5

the deputy that Mitleff had his hands around Alishia's neck choking her and that he had also struck Alishia.

Kim Basinger, a registered nurse, certified forensic nurse, and sexual assault nurse examiner, testified that strangulation involves occluding the airway or wind pipe, or it can impede the blood flow of a major artery to the brain. She testified that the two major arteries in the neck are the jugular and the carotid. She also testified that there is some disagreement about how much pressure to the artery it takes to cause major damage, some articles maintaining that it requires only eight pounds of pressure for eight seconds on the carotid artery while other sources say that it requires eleven pounds of pressure for eleven seconds. She likened this pressure to a firm handshake, and said she believed that amount of pressure being applied for eight to eleven seconds is sufficient to cause permanent damage or death. When shown the photographs of Alishia's injuries, she testified that the scratches and abrasions were just about over the carotid artery. She also testified that when most people say they have been choked, they are referring to strangulation. Finally, she testified that if someone said they had been choked and thought they were going to die or pass out, then they were probably strangled. On cross-examination, Basinger acknowledged that she had never examined Alishia, had not examined any medical records related to the incident, and had talked with neither Destinie nor Bowen.

Bowen acknowledged that Destinie had come to her house to call 9-1-1 and that Destinie told her Mitleff had struck and choked Alishia. She also testified that Alishia suffered a scratch on her neck. She claimed that she did not remember telling the police officer that Alisha had hand marks on her neck and a busted lip. She explained that she told Alishia, "[Y]ou always come to

6

his rescue" on the morning of the incident, because she was tired of Alishia complaining that she and Mitleff were fighting and then turning around and indicating that they were best friends. However, she also claimed that she had never seen them fighting. Bowen testified that on the morning of the incident, she wanted to believe her daughter when she said that Mitleff had choked her and she thought she was going to die and pass out, but that part of her did not believe it.

At trial, Alishia and Destinie told an entirely different account of what happened that morning than the account they had given to Herrera at the time of the occurrence. Alishia claimed that although she remembered Herrera coming to her house on that morning, she did not recall talking to him. She also remembered giving a written statement on the day of the incident, but explained, "I was mad and I say things when I am mad." She testified that on that morning, Mitleff was asleep on the floor and that she woke him by screaming and yelling at him. He called her a name then went to the bathroom. She claimed that she followed him, started "going off" on him, and tried to hit him, but that he tried to calm her down. Alishia explained that the scratches on her neck resulted from her struggles to get away from him as he sought to calm her down. She claimed that she started screaming, told Mitleff that he was going to jail, and said, "[Y]ou choked me." She said that is when Destinie came running down the hall and asked, "He hit you?" and she told her, "Yes." Alishia maintained that she has a very bad temper, that she is a very selfish and controlling person, and that she goes at Mitleff all the time. She also claimed that she was not truthful in her statements to Herrera and that she fabricated her story. Alishia also admitted that she had filed family-violence assault charges against Mitleff in 2006 and had told the Titus County Sheriff's Department at that time that he had choked her, but that she had dropped those charges.

7

She stated that she had dropped those charges because he had not filed charges against her and maintained that she had been the primary aggressor, even though she is only 5'4" and weighs 120 pounds.[1] Alishia denied that she changed her account only after the prosecutor told her that Mitleff was charged with a felony and informed of the range of punishment.

Destinie testified that she woke up the morning of March 29 when she heard her parents arguing loudly. She admitted hearing her mother screaming, but said she screams all the time when they are arguing. She did not remember telling Herrera what her mother was screaming. Destinie claimed that when she went into the room, she just saw Alishia and Mitleff fussing, screaming, and hollering, and she stated that she then went to her grandmother's house. She denied seeing anything else. She stated that she did not remember telling Herrera that her father was choking Alishia, claiming that she dialed 9-1-1 because she was tired of hearing her parents argue and she wanted them to get a divorce. She also claimed to have no recollection of telling the 9-1-1 operator that she had seen Mitleff choke her mother, or telling the operator that if she had not gone into the bathroom, he would have killed her mother. Destinie acknowledged that in her written statement she said she saw Mitleff choke her mother in the bathroom, but at trial she recanted that statement.

Lindsay Smith, the victim assistance coordinator at the district attorney's office, testified that Alishia came to the office in May 2015 wanting to drop the charges against Mitleff. She testified that at first, Alishia said that she was truthful on the day of the incident and that she only wanted to drop the charges because she and Mitleff were working through their issues. Smith

---

[1]Mitleff is 5'8" and weighs 230 pounds.

testified that after the district attorney explained to Alishia that Mitleff was charged with a felony and told her the applicable range of punishment, Alishia then claimed that Mitleff did not choke her. She also testified that Alishia returned to the office in September and that she then claimed that Mitleff had his hands on her shoulder and was only trying to calm her down. Alishia said that she had tried to get away from him and his hands slipped and scratched her. Finally, Smith testified that it is common for victims of family violence to later want to drop the charges and to change their stories.

### C.    Analysis

Despite the recantations of Destinie's and Alisha's original versions of Mitleff's actions, as the sole judges of the credibility of the witnesses and the weight to be given to the evidence, the jury was free to credit their statements given to Herrera and the 9-1-1 operator, and to discount Destinie's and Alishia's trial testimony. In her original statement, Alishia said that Mitleff grabbed her by the neck and choked her so hard that she thought she was going to lose consciousness and die. Destinie confirmed this and stated that she saw Mitleff with his hands around Alishia's neck choking her. Destinie opined that Mitleff would have killed her had she not intervened by coming into the room. In addition, photographs of Alishia's neck taken on the morning of the incident show scratches and abrasions on her neck, which a reasonable jury inferred to be consistent with Mitleff strangling Alishia with his hands. Finally, Basinger testified that the pressure of a firm handshake around the neck for eight to eleven seconds is sufficient to cause permanent damage or death. In addition, the State offered credible testimony through Smith that cast doubt on the veracity of Alishia's and Destinie's recantations. Based on this evidence, a reasonable jury could

9

conclude that Mitleff had intentionally, knowingly, or recklessly impeded Alishia's normal circulation of blood by applying pressure with his hands to her neck. Thus, this evidence is sufficient to support the jury's finding.[2] We overrule Mitleff's first point of error.

## II. Ineffective Assistance of Counsel Was Not Established

In his second point of error, Mitleff contends that he was deprived of effective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees one accused of a crime the right to effective assistance of counsel for his defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). If a conviction results from ineffective assistance of counsel, it denies the accused this valuable constitutional right. *See id.* at 687–88. The right to effective assistance of counsel does not mean, however, "errorless or perfect counsel whose competency of representation is to be judged by hindsight." *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006).

To prevail on his ineffective-assistance claim, Mitleff must prove by a preponderance of the evidence both that (1) his counsel's performance was deficient (that is, that it fell below an objective standard of reasonableness), and (2) it is reasonably probable that, except for his counsel's unprofessional errors, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88, 694; *Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex. Crim. App. 2011). For us to find that Mitleff's trial counsel was ineffective, the trial record must

---

[2]In his reply brief, Mitleff argues that when a witness testifies at trial to material, inculpatory facts against an accused and, after verdict, but before a motion for new trial has been acted upon, such witness signs an affidavit claiming that he testified falsely, a new trial should be granted. *See Williams v. State*, 375 S.W.2d 449, 451 (Tex. Crim. App. 1964). However, *Williams* noted that this rule does not apply in all cases and that whether to grant a new trial is within the sound discretion of the trial court, taking into account all the facts developed at trial and in the retracting affidavit. *Id.* at 451–52. In this case, there has been no retraction of trial testimony. Rather, at trial, Destinie and Alishia recanted their original statements. In such a case, the jury, as fact-finder, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony and any other evidence. *Hartsfield*, 305 S.W.3d at 869.

affirmatively demonstrate his deficiency. *See Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). In order to show ineffectiveness, it is insufficient to show that his trial counsel's acts or omissions were merely questionable. *See id.* We presume that trial counsel had a sound trial strategy, and this presumption cannot be overcome unless there is evidence in the record of counsel's reasons for his conduct. *Martinez*, 330 S.W.3d at 901. "Trial counsel 'should ordinarily be afforded an opportunity to explain his actions' before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When the appellate record is silent regarding why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

In determining whether the alleged deficiencies prejudiced Mitleff, we presume that the jury acted in accord with the law. *Strickland*, 466 U.S. at 694. In assessing prejudice, "we look to the totality of the circumstances and evidence presented to determine if there is a reasonable probability that, but for Counsel's deficient performance, the result of the proceeding would have been different." *Martinez*, 330 S.W.3d at 903 (citing *Strickland*, 466 U.S. at 694). To establish prejudice, the appellant "must show 'that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable.'" *Id.* at 901 (quoting *Strickland*, 466 U.S. at 687). The appellant may not simply show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* (quoting *Strickland*, 466 U.S. at 693). Rather, he is required to show that

11

"there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Id.* (quoting *Strickland*, 466 U.S. at 695).

Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006); *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Thus, we need not determine that trial counsel's performance was deficient, if it has not been shown that it is reasonably probable that the outcome would have been different. *Strickland*, 466 U.S. at 697; *Martinez*, 330 S.W.3d at 901.

Mitleff argues that his trial counsel's performance was deficient (1) because he failed to move for an instructed verdict at the conclusion of the State's evidence and (2) because he stated in closing argument, regarding Alishia's and Destinie's varied statements, "It's like a bunch of Baptists. You get four stories, you get five opinions, you get five versions." Regarding the first ground, Mitleff argues that had his trial counsel moved for an instructed verdict, he would have had a good chance at acquittal. However, we note that after the State rested, the following exchange took place:

> THE COURT: Anything from the defense, Mr. Forsman?
>
> [Counsel for Defendant]: No, Your Honor. And normally I would do a motion for an instructed verdict, but I like to have a little credibility with this Court. And in view of the case-in-chief, I believe it should go to the jury.
>
> THE COURT: Well, and it will. If you had, the issue is whether or not they believe the testimony, but there is sufficient testimony and evidence before this jury for that, if believed, they could find the defendant guilty as charged in the indictment. That's up to the jury. And so we've got that.

Thus, the record shows that even if Mitleff's trial counsel had moved for an instructed verdict, the motion almost assuredly would have been denied by the trial court. To go through the motions of

asking for an instructed verdict would have been senseless because there was sufficient evidence to justify submission of the case to the jury. In addition, Mitleff did not put on any evidence in the guilt/innocence phase of the trial. We have already determined that the evidence put on by the State in its case-in-chief was sufficient to sustain the jury's finding of guilt. Therefore, Mitleff has failed to show how the outcome, in reasonable probability, would have been different had his trial counsel moved for an instructed verdict.

In support of his second ground, Mitleff asks this Court, without citing any evidence, to take judicial notice (1) that the dominant Christian congregation in Franklin County is Baptist, (2) that a good many jurors in Franklin County are Baptist, and (3) that if they are not Baptist, they have family and friends who are. He then asks us to assume that trial counsel's comment was prejudicial to his case,[3] without any showing of prejudice. Although we may take judicial notice of an adjudicative fact for the first time on appeal under Rule 201 of the Texas Rules of Evidence, we should do so "only when necessary to avoid an unjust judgment, and only when the fact to be judicially noticed is beyond reasonable dispute." *Morris v. State*, 361 S.W.3d 649, 676 (Tex. Crim. App. 2011) (citing *Watkins v. State*, 245 S.W.3d 444, 456 (Tex. Crim. App. 2008)); *see* TEX. R. EVID. 201. In this case, whether "a good many" Franklin County jurors are Baptist, or friends and family of Baptists, may be reasonably disputed, particularly as to the makeup of the jury sitting in this case. As the Texas Court of Criminal Appeals has cautioned, on appeal we may not judicially

---

[3]Mitleff argues in his brief that trial counsel's strategy of pointing out variations in Alishia's and Destinie's testimony was good trial strategy until the allegedly prejudicial statement. In his reply brief, Mitleff reasserts this statement, then argues that trial counsel disparaged Alishia's and Destinie's testimony recanting their prior statements. However, the record reflects that the "Baptist" remark was made in the context of discussing the State's attempt to show how, when, and why Alishia recanted her testimony, not in discussing the testimony itself.

13

notice facts that may be reasonably disputed because to do so, "simply serves to relieve the party with the burden to prove the adjudicative fact of the necessity of actually proving it, without even affording his adversary the opportunity to challenge its indisputability." *Morris*, 361 S.W.3d at 676. Mitleff does not cite any evidence in the record as to the religious affiliation of the jurors, nor does he cite to any evidence that the remarks of his trial counsel in any way influenced, or tended to influence the jury's deliberations. Even if the denominational makeup of Franklin County were to have been proven, there is nothing presented by Mitleff to demonstrate that his counsel's reference to Baptists would have been sufficiently offensive to sway the jury in its deliberations. As we have already held, there is sufficient evidence on which a reasonable jury could find Mitleff guilty of assault. Therefore, even assuming the remarks constituted a deficient closing argument, Mitleff has failed to establish that, but for the remarks, there is a reasonable probability that the outcome would have been different. We overrule Mitleff's second point of error.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:    March 25, 2016
Date Decided:     May 25, 2016

Do Not Publish

14